W. Beecher Fonda *v.* Isaac L. Gibbs, et al.

May Term, 1902.

Present: Rowell, C. J., Tyler, Munson, Start, Watson, Stafford and Haselton, JJ.

Opinion filed August 8, 1903.

*Mortgage—Resulting trust—Notice—Rights of assignee.*

When a wife joins with her husband in a mortgage of land, the title to which he holds in trust for her, the mortgage is superior to the trust, though she is not described in the instrument as the wife of the other grantor, and the mortgagee takes the security know-

ing that the land covered was formerly sold as a part of the hus-
band's insolvent estate, and that the husband's title was by war-
ranty deed from a former mortgagee, who had foreclosed.

The assignee of a mortgage which is superior to a resulting trust is
entitled to priority, though he takes the assignment with notice of
such trust.

APPEAL IN CHANCERY.  Heard on the report of a special master and exceptions thereto, at the March Term, 1902, Franklin County, *Tyler,* Chancellor.  *Pro forma* decree for the orator.  The defendants appealed.

*Farrington & Post* for the defendants.

The trust arose in 1893 when the assignee of J. L. Gibbs sold to Nellie W. Gibbs the real estate in question, and took her money for it.  *Williams* v. *Wager,* 64 Vt. 326.

The orator had notice of this trust.  He knew that all the property belonging to Gibbs' estate was sold; he knew that Mrs. Gibbs was not described as the wife of Mr. Gibbs; he knew when he purchased the Lepper mortgage that the girls claimed an interest in the premises.

*C. W. Witters* for the orator.

There is nothing in the case to show that the orator had notice, by record or otherwise, that Nellie W. Gibbs had any title to the premises.

As to the Lepper mortgage the orator can stand on the *bona fide* title of his assignor.  All his mortgages are superior to the trust, if one existed.  *Besson* v. *Eveland,* 26 N. J. Eq. 468; *Huss* v. *Kenney,* 43 Neb. 822; *Logan* v. *Eva,* 144 Pa. 312.

HASELTON, J.  This was a petition to foreclose three mortgages.  The petition was answered.  A cross-bill was

filed and answered. The case was referred to a special master who reported, and exceptions to the master's report were filed by both the orator and the defendants. A *pro forma* decree was rendered in favor of the orator in accordance with the prayer of his bill. The defendants appealed.

From the master's report the following facts appear: The defendant Isaac L. Gibbs was a married man and the husband of Nellie W. Gibbs, at all times material to this case, down to her death April 16, 1898. The other defendants, Mary Gibbs, Fannie Gibbs, Frances Gibbs, and Georgiana Gibbs, were children and heirs at law of said Isaac L. Gibbs and Nellie W. Gibbs. The said Mary Gibbs died February 14, 1902, after the institution of these proceedings.

The premises covered by the mortgages in question are situated in the town of St. Albans, and were conveyed to the said Isaac L., by a redeemable lease, March 10, 1890. At the April Term, 1893, of the Court of Chancery for Franklin County, a decree of foreclosure against said Isaac L. on said lease was obtained. At this time the estate of said Isaac L. was being administered in insolvency, he having been adjudged an insolvent debtor February 3, 1893, and his estate having been assigned to an assignee. No record of such assignment was made in the land records of the town of St. Albans. At a meeting on said insolvency estate the Judge of the Court orally directed the assignee to sell for a price named the real estate of the insolvent, which consisted of the premises in question and of another lot of land, and in accordance with such order of the Court, the assignee, May 17, 1893, sold said real estate to Nellie W. Gibbs, wife of said Isaac L., for about $400.00, which sum she paid out of her sole property. It was the intention of the assignee to deed to said Nellie W. all the interest of said insolvent estate in both pieces of land referred

to. He, in fact, however, executed and delivered to her a deed which omitted any reference to the premises in question. The mistake came about through the failure of said Isaac L. Gibbs to furnish the assignee with all his muniments of title to real estate that the assignee had called on him for. April 24, 1894, the decree in chancery above referred to was assigned to one H. E. Lewis. Mrs. Gibbs, out of her own money, redeemed the decree so assigned to H. E. Lewis, and May 30, 1895, before the equity of redemption had expired, said Lewis executed to said Isaac L. Gibbs a warranty deed of the premises in question. The next day one Ernest A. Lewis, a son of H. E. Lewis, acting for his father, delivered the last mentioned deed to Isaac L. Gibbs, and the same was duly recorded. There were present at the delivery of the deed Isaac L. Gibbs, his wife, Nellie W. Gibbs, and one F. J. Houghton, who was acting for and with the said Nellie W. Gibbs. An objection to the deed was for a time made on account of its running to Isaac L. Gibbs instead of Nellie W. Gibbs. The grantor, H. E. Lewis, was, however, out of town and was to be absent for some considerable time. Said Nellie W. took counsel with reference to the matter, and the deed was delivered and recorded as above stated. Afterwards, but when does not appear, said Nellie W. Gibbs and her daughters Mary and Fannie furnished some money which was used for the construction of buildings on the premises in question. At no time did the records show any title or color of title in said Nellie W. Gibbs.

There are no facts reported which tend to show that a resulting trust in the premises arose after the giving of any of the mortgages sought to be foreclosed. Assuming, however, that from the facts reported a resulting trust estate in the premises arose in favor of Nellie W. Gibbs before the giving of

any of the mortgages in question, still, in view of all the facts reported, the case is not affected thereby.

At some time in 1895 or 1896, the exact time not appearing, said Isaac L. Gibbs with his family moved onto the premises in question, and from that time continued to reside there.

The first of the three mortgages in question was given to one George W. Lepper, August 3, 1895, the said Isaac L. and his wife Nellie W. joining in the mortgage. This was given to secure a note for the sum of $425.00 of even date with the mortgage and signed by the said Isaac L. Gibbs. The second of the mortgages in question was given to the orator December 14, 1895, both the said Isaac L. and his wife Nellie W. likewise joining in it. This mortgage was given to secure a note of even date therewith for $840.00 signed by the said Isaac L. This note was in settlement of an account in favor of the orator for money and material used in the construction of buildings on the premises in question. Though the wife, Nellie W., joined in these two mortgages, she was not named in either as wife. These mortgages were clearly rendered superior to any interest of the said Nellie W., in the premises in question.

The third of these mortgages was given to the orator by the said Isaac L. Gibbs, June 17, 1898, after the death of said Nellie W., which, as hereinbefore stated, occurred April 16, 1898. Under this mortgage the orator advanced to said Isaac L. cash and material to the value of $1,987.25, which was used in the construction of buildings on the premises in question. At the time of taking the last mentioned mortgage the orator examined the records, and found that the title to the mortgaged premises to be as already stated, and at that time the said Isaac L. Gibbs represented to the orator that he was the owner of said premises, and that the only encumbrances thereon were the Lepper mortgage and the previous mortgage to

the orator.    This mortgage the defendants claim is subordinate to the interest which the defendants, Mary, Fannie, Frances and Georgiana, acquired in the premises upon the death of their mother.    For it is claimed that in the taking of this mortgage the orator was affected with notice of the resulting trust.    The principal ground of this claim is that in the Lepper mortgage and the first mortgage given to the orator, the wife of Isaac L. had joined without being designated as wife. But there was nothing about this fact which put the orator upon any inquiry which he did not make.    Another ground of this claim is the finding by the master that, during the insolvency proceedings in 1893, the orator knew that all of the property belonging to the estate in insolvency of said Gibbs was sold at the time.    It is argued, in effect, that this put the orator upon inquiry as to the person to whom the interest of Gibbs, in the premises in question, was sold, and that this inquiry followed up with due diligence would have brought to his knowledge the fact that the premises were sold, though not deeded, to Mrs. Gibbs.    But this cannot be said.    It is further argued, in substance, that the warranty deed from H. E. Lewis to Isaac L. Gibbs put the orator upon inquiries which should have revealed the trust estate in Mrs. Gibbs.    But this argument is untenable.    The express finding of the master is that the orator did not know of any claim to a trust estate in the premises until sometime in 1901, when the defendant, Isaac L. Gibbs, was in bankruptcy.    When, therefore, the orator took his second mortgage in 1898, he did not have record notice or actual notice of the trust estate, and the facts relied upon by the defendants ought not to be given such force as to charge him in law with implied notice.

The defendants claim, in their brief, that the resulting trust arose in 1893, when the assignee of the estate in insol-

vency of Isaac L. Gibbs sold to Nellie W. Gibbs the real estate in question, and took her money therefor. It is to be noted that the fact that the money then paid for said real estate was the money of Nellie W. Gibbs is found by the master upon the testimony of Isaac L. Gibbs; and that, as above stated, when the mortgage of 1898 was given to the orator, the same Isaac L. Gibbs represented to the orator that he, Gibbs, was the owner of the premises covered by the mortgage, and that they were not encumbered otherwise than by the Lepper mortgage and the previous mortgage to the orator.

After learning of the claim made to a trust estate in the premises, the orator purchased the Lepper mortgage, hereinbefore referred to, and these foreclosure proceedings were brought. The defendants in their cross-bill do not question that this mortgage, in the hands of the orator, is superior to the resulting trust set up by the defendants, this mortgage, as before stated, having been joined in by the said Nellie W. Gibbs. The cross-bill prays that the trust may be decreed to be a good and valid lien upon the real estate in question having precedence over all mortgages or liens subsequent to the date of the last mortgage executed and signed by the said Nellie W. Gibbs, and that they may have a reasonable time in which to redeem the mortgages executed by the said Nellie W.,—that is, the Lepper mortgage and the first mortgage given directly to the orator. In argument, however, the defendants claim that the orator cannot foreclose the Lepper mortgage, because he purchased it after notice of the trust estate. This argument, however, is not sound, as we have seen that Mrs. Gibbs had encumbered her trust estate by joining in the Lepper mortgage; and in purchasing the Lepper mortgage the orator acquired a security which the act of Mrs. Gibbs had made superior to the resulting trust. As assignee of the Lep-

per mortgage the orator is entitled to the priority to which the original mortgagee was entitled.

*The result is that the decree of the Court of Chancery is affirmed, and the cause remanded.*